for case number 227033 United States v. Burgess. Counsel. Your Honor, may it please the court. Counsel, my name is Shira Keeval. I'm an assistant federal defender and I represent Kendall Burgess. At trial in this sex assault case, PG testified competently, completely, and without recanting. The video's taped statement that she gave investigators two years earlier should never have been admitted as substantive evidence because it was neither sufficiently probative nor sufficiently trustworthy to fall within the narrow contours of the residual hearsay exception. Okay, so you agree that if she would have gotten on the stand and recanted that it would be properly admitted? Potentially under Harrison. Harrison was a close investigation of the facts of that case and the recantation in Harrison was unconvincing to the judge because of prior allegations that she'd made, the content of them, because of how the defendant in that case had responded, essentially acknowledging that he had committed these acts. In that case, it was admissible and it often will be admissible in that situation if there's a reason to believe that the recantation was forced or was is false. Okay. We don't have that situation here. So she was the government's witness? Correct. Could the government have, if it was a transcript, could the government have read in that transcript to her to refresh her testimony and say, you've said this, but let me read this into the record and see if it refreshes your recollection? Well, it wouldn't have been admitted as substantive evidence. No, but you read it and then you get her to state whether it changes it. Why didn't the Well, that's a good question. I would like to distinguish between refreshing. Would you object to that? Well, there's refreshing recollection, which does not involve reading testimony into the record. So if the purpose had been to refresh recollection and that's how they had done it, then yes, we would have objected. You allow her to watch the video. You allow her to listen with headphones. That's how refreshing recollection generally works in a child witness case, but it's not played for the jury. And that's perfectly legitimate. That's how the rules of evidence expect this to happen. Another option the government has is to impeach their own witness. They can do it gently if the refreshing recollection doesn't work. And again, that doesn't come in. That would be something the jury would hear, but they would be instructed that they could not consider that as substantive evidence. When is the government permitted to impeach their own witness? The government is always permitted to impeach their own witness anytime there's a prior inconsistent statement. There's nothing that distinguishes between the party that calls the witness or the party that doesn't. They don't like to do it, presumably, but just because they don't want to do it doesn't mean that this new door opens up that goes against our system, which gives primacy to live testimony. I mean, the same can be said for someone who recants. I mean, that happens in criminal cases all the time. The government calls someone in a that's a new day in America and they say something completely different than expected. And the government can bring in their prior inconsistent statements, right? That's right. And it's a quotidian occurrence. I think that's part of my point here. The residual hearsay exception only applies when it's an extraordinary circumstance. And that simply is not what you have here. There are hypotheticals that one could imagine where the government tries to refresh recollection, tries to impeach, ends up with different testimony, has some need, and wants to narrowly, on some point, say we have something more probative. I don't think we would have ended up there in this case, but that is a situation that may arise. But the mere fact that someone gives inconvenient or unexpected testimony has never been the basis that any court in this in the federal system has affirmed or allowed in evidence under this extraordinary measure. So you have that you have this court, which you have Harrison, which says, you know, the child recanted completely and unconvincingly. You have two other circuits that have gone further and they've additionally held an out-of-court statement may be more probative if the child is unable or unwilling to testify about details of the We have that here. We have a child who answered every question. She provided more details than before. She did not profess memory loss. She clarified her testimony when she was asked, even about the most serious aspects of her allegations. She corrected lawyers if they were mistaken and she indicated when she did not understand a question. To the extent that there was any lack of clarity in what she had to say, that was mostly because the lawyers were confused because they didn't react perfectly right away to hearing something new on the stand that they didn't expect. But those unclear answers that when did this happen? Did this happen then? Things that were asked sort of with, I'm not even sure the right grammatical term, but with a lack of clarity about the nouns that they were referring to, those were cleared up. They were clarified on cross. They were clarified further on redirect and this was not a situation where you were left with internally inconsistent testimony or unclear testimony. You truly have. Let me be sure if I understand your argument. You're saying because the child on the witness stand answered every question, didn't deviate, didn't hesitate or anything like that, that that in itself was the basis for the court should not have allowed the videotape in. I think it's a tiny bit subtler than that. But your Honor, the question here is not just which one is more probative, what she said in court or the video. The question is, what is the most probative evidence reasonably available? And so if the government comes up before your Honors and says, oh, this video was better than what she said in court. And that's what they said in court. They said we want to get this in because it was better. That's not enough because because you have a child who is willing to testify, who is able to testify, who is not recanting, who's not professing memory loss, who's providing all of the details she's asked for and clarifies her own testimony, clears up any issues with her testimony. But you know, she didn't clear up any issues with her own testimony, did she? I mean, what she said, at least initially, was dramatically different than what she said in the interview. And don't we have, I mean, this is not something you see in adult cases. I mean, we don't pop up videos claiming the adult testified more probatively in a statement they gave to officers or something like that. We might use something like that for impeachment. But this is sort of a special thing in these child sex abuse cases, isn't it? I think that it comes up more often in child sex abuse cases. And don't you think it does because we have a recognition that putting these kids on the stand is a high-pressure situation where they might not be able to give the most probative testimony? If you want to step back, I think that we are more kind in that situation. We're more forgiving. And when the child gets up and hesitates, can't provide details, can't remember or says they can't remember or has difficulty with the court situation, then sometimes, yeah, we're potentially a little bit more kind or forgiving and we allow more for the government's case. But this was very different than that. This was a child getting up and not giving any of those examples I just gave, but saying, he put his private in my butt. Clarified in, yes, in. Clarified butt, yes, the part that I poop out of. So if the government needed to explore that and wanted to, why didn't you say that before? Did you say that before? When you say in, are we talking about something that should have shown up on medical evidence and maybe you're not telling the truth? Or is this something else and we need to do more clarification? Those are all things that the government gets to do and has the tools to do, and they have a witness on the stand ready, willing, and able to answer their questions. Okay. What I'm trying to visualize in my mind is your argument that, let's say I have to write a rule in evidence as to how to approach the very subject you're talking about. And that's why I was very interested in the litany of when you said this, this, this, this, and this. If this all happens, then the government shouldn't have been allowed to put the video on. I'm trying to figure out, okay, how would I write a law or write a case that's going to say that? Particularly when this is all usually viewed from the discretion of the trial court. So at some point, we've got to say, okay, this was an abuse of discretion. If you go beyond this point, what's that point? Well, and your honor, that's a really good question. And that's why I use this phrasing competently, completely, and without recanting, because that gathers in the totality of the federal case law on this point. So this child testified competently, testified completely, by which I mean she didn't stop testifying at some point or refuse or be unable to answer questions, and without recanting. And in that situation, it is an abuse of discretion to rely on and to bring in a substantive evidence this prior, these prior statements. And we have that, we have in US v. Balfany from the Eighth Circuit, a similar phrasing, which is where the alleged victim's testimony was very comprehensive and included approximately, approximate times and details about each incident of abuse. Now, that's a kind of narrower construction because it's about the facts of that specific case. But that was a situation where it was an abuse of discretion to allow the testimony in. So I think you don't have to make a particularly wide-reaching ruling here. You don't have to take this away as a tool that can be used in extraordinary circumstances, many of which might happen to be child sex abuse cases. But Congress was very clear in the creation of this. It was a negotiation. It was a narrow residual hearsay exception that was created. Congress also said, we're not allowing prior, it was a proposal to allow prior inconsistent statements in a substantive evidence, and that was rejected. So Congress says, like, this is narrow. Hornbook law, every court basically says we can't create categories, new categories of evidence that do come in based on the residual hearsay exception. If we want new categories of evidence that comes in, that's for the Rules Committee in Congress. And many states have done that. There's over 30 states that have created different rules from each other, but specific rules to address prior statements of child sex abuse victims. The federal court system has not done that. We don't have some blanket exception. What we have is we have this narrowly designed exception that was specifically designed. I mean, if you look at the original statement, the commentary on the original rule, the case that is cited for why we have this exception in the first place is something where it was beyond doubt that a newspaper article, an old newspaper article, was telling the truth about a fire, which came to be relevant decades later in a case, and there needed to be a path to get something like that in if it didn't fall within any of the regular rules of evidence. We have something really different here. We have something where we do rely, we continue to rely on the primacy of live testimony and the most probative evidence reasonably available, even if the witness, the declarant is a child, is the child's in-court testimony, unless one of these unusual circumstances exists. Do you, do you reject the Pinot case from the Eighth Circuit? You know which one I'm talking about? I do. That is a real high water case. It was decided on plain error. I, it does include this phrase, exceptional circumstances generally exist, that goes directly against another case from a year later from the same court that says generally the in-court testimony is better than the out-of-court statement. But I also think that in that case, she wasn't merely hesitant and inconsistent and at times unclear, but it was something that the lawyers had not been able to clean up. They tried and failed, and we don't have that here. If I may reserve the remainder of my time, I'm very sorry. I have a question, but I don't want to intrude. Go ahead, we'll give her some more time. I'm struck by the government had a witness that was cooperative and friendly and helpful, not friendly, but helpful on the stand. So they did have an option available to them, but it, but could the government say that this earlier video deposition, I guess it wasn't a deposition, but interrogation, was more probative because there was repeated sexual intrusions on this little girl and that they varied in the extent of the violation and you could see how a young girl could get confused over time with which ones happened when, and that in this particular case, given her age and given the repeated violations upon her, the currency of the testimony would be something you could not replicate significantly later as a witness. And all we have to prove is that it's more probative, not that there isn't evidence that is probative, but simply this is better because of her repeated violations upon her and her young age. And Your Honor, that's not how the courts have interpreted that language. That's the way the language seems. And again, it's more probative than any other evidence reasonably available. So Wright and Miller say if there's another way to prove the same point to approximately the same effect, that's what you need to do. But that's not inconsistent with more probative. I mean, you're kind of arguing that they have to show that there isn't another option, but this more probative to me admits that there are other options like trial testimony, but this is more, maybe just slightly more probative, but at least it is, it doesn't have a quantification, a lot more probative or a little bit more probative, just more probative. And why isn't it true that a statement shortly after the event, very shortly after the event, in a examination which everybody seems to agree was pretty well done and not leading, would be more probative when she had faced a variety of different sexual offenses by this guy. And you can see how a young girl would get dates confused over time. And Your Honor, if this case was just about getting dates confused over time, I don't know if we'd be here and we'd have a struggle on harm. This isn't just about dates confused over time. This is about brand new, much more serious allegations that the government wants to ignore. They re-paraphrase her differently than how she testified. They absolutely disclaim what her testimony was that, you know, even the government now doesn't disclaim during rebuttal closing. This is not about, oh, we'd like a slightly cleaner narrative where this happens on Good Friday because then we can tell this better story, which still is not, I don't believe, a legitimate reason to allow them to use the residual hearsay exception. This is, we've got a real problem, we think, and we don't want to deal with it the way that our system says to deal with it, which is refreshing recollection, impeaching with prior and consistent statements, asking follow-up questions just to understand, right? And they don't do any of those things. They want to do this other thing. And the question isn't just, is it more probative, but then anything reasonably available. That's not quite what the language of the rule says, but you've answered my question and we've not charged you for the time on that. So I think I'll just say thank you and we'll hear what the government has, what the other side has to say on this. Thanks, counsel. We're going to give you two minutes for rebuttal. Good morning, Your Honors. Counsel, may it please the court. My name is James Braun and I'm an assistant United States attorney, appearing on behalf of the United States. To follow up on Judge Carson's point, child witnesses are different and that's why most courts to address this issue have held that extraordinary  cases. Okay, and in response to that, I'm going to respond to that question. Give me your best case that you have that would support that and then give me your worst case, the case that's against you the most. I want to see those because y'all have brought a tough case because it's an evidentiary question dealing with, I guess, with 803, 804 and 807. So you've got evidentiary questions created under this rule that still depends on the trial court's discretion. And you all have placed in our laps some way to write whichever way we go. That's why I want to hear what's the best case that you have that supports your position. What's the worst case against you that you have? I think there are a number of cases that support the trust. I just want your best. So I would look at the probative element of Rule 807. More, as Judge Ebel was a minute ago, more probative, more, what was it? Yeah, more probative. Is that right? Okay, we'll proceed. More probative on the point at issue. And we would point to the Pinot case. Which one? Pinot, P-N-E-A-U-X, where initially the victim testified that there was no abuse, but then the prosecutor showed her a drawing, an anatomical drawing, and had the witness point to the parts where the defendant had touched the private parts. And so ultimately the victim did testify to abuse. And that's similar to what we have here, where initially PG testified she couldn't remember, and the prosecutor drew it out of her what had happened on April 19th. The problem is when she was pro further, she was quite emphatic as to what happened that day. There didn't appear to be any confusion in her mind. No, but then at that point it became a stark difference between her trial testimony and her... So if the government wants to impeach her, let them say we're now going to impeach this witness, a child. That would be a tough road to hold for the government. Well, and I think that's where the fact that child witnesses are different comes into play. She didn't testify that she didn't remember, so it wasn't a matter of refreshing her specific. So, I mean, I don't know how to deal with this more probative, but we sometimes morph it to say if you have any other probative evidence, you can't use this. But that's not what the rule says. It says what's more probative? And I think it's a pretty strong argument that proximity makes things often more probative, even though we have this great preference for trial testimony. And we would agree, especially with... I know you would, yeah. Especially with a child witness who's testifying to something that happened two years before when she was seven years old. The fact that her forensic interview was given very close in time to the alleged incident, just three days later, makes it more trustworthy. But that rule isn't limited to child sexual abuse cases. If we go that route, we can't cabinet just children or special rules for children. That's got pretty wide-range implications. No, and we wouldn't ask the court to, on that point, as far as trustworthiness and probativeness. That goes more towards when the court can employ Rule 807. What is an exceptional circumstance? We would argue generally in child sex abuse cases, that is an exceptional circumstance that would justify employing the rule if you can meet the trustworthiness factor and the probativeness factor. We would argue that the trustworthiness factor was satisfied, and it is more probative as far as to the point of what happened on April 19th. That's really what this trial revolved around. What happened that Easter weekend? And PG testified that, initially, she testified that Burgess had put his penis into her butt. Then the prosecutor asked her about whether he had touched her in other ways, and she talked about him putting his penis in her mouth and touching her on top of and below beneath her clothing. And she testified, PG testified, that that happened on April 19th. On cross examination and redirect, she said, no, he didn't put his penis in my mouth on April 19th. It was just him putting his penis into her butt. Now that was, again, in stark contrast to what she had said during her forensic interview, and that was the first time she had said that. And so, at that point, what's more probative of what happened on April 19th, when you have this evidence, what's more probative is her forensic interview that the court determined is trustworthy because of all the factors the court talked about. The fact that it was given close in time, that it was in response to open-ended, non-leading questions asked by a trained forensic interviewer. The fact that she used this as additional evidence. Counsel, if I understand you're opposing counsel correctly, that's not, that's part of what she's arguing, but she's saying that, in addition, you put a whole lot more into that video than what should have been just to clear the evidentiary factor of getting it in under 807. Now, maybe I misunderstood, but that's what I thought her argument was coming from, that not only was it just the fact of the evidence of putting on the video, but that you expanded it to maybe I misunderstood. I didn't understand that to be the defense's argument. I'll let her straighten me out when she, when it's her rebuttal again. So, counsel, let me ask you a question. It's, it sounds to me like the way the government used the evidence in this case is, you know, sort of an effort to take away the defense's right of cross-examination. I mean, the purpose of cross-examination is, because, because we're not, if she had testified perfectly consistently, I guess, when you put her on the stand initially, or whoever did the trial, I don't know if it was you or someone else, then you wouldn't have been able to put the video on. If a video testimony matched what she said on direct, you wouldn't have even had an argument to put the video on, would you? I think that's correct. Okay. So, and what concerns me here is that the real, the direct and the video are not entirely inconsistent, but seems to me that the real inconsistency came during cross-examination when the defense lawyer was trying to pin her down, and at that time she denied the statements that she made in the video, and only basically relied on the idea that she'd been subject to anal penetration. Is that? That's accurate. Okay. But I think we need to look at her testimony as a whole to see whether it justifies bringing in the forensic video under Rule 807, because it was only after she testified as a whole that it really opened the door to introducing the video under that rule. Right. It just concerns me that maybe this smacks of improper bolstering because there wasn't enough inconsistency in the direct testimony. Right. But by the time she was cross-examined and on redirect, she had made it clear that she was testifying to only anal penetration on April 19th. And so that had been clarified by the point of redirect. And so that was her entire testimony. She basically recanted, so to speak, on the stand as to that part. Right. Have the other cases that we've been talking about, the Eighth Circuit cases in particular, have they been a situation where the recantation occurred during cross-examination? I mean, because that is the tool of cross-examination. If the defendant can't get the witness to either be inconsistent or to recant on the stand, then they might as well not cross-examine them at all. I don't know of a case that dealt with that specific circumstance, but here the defense was able to make use of the cross-examination to support their theory of the case, which is that you can't believe her because her story is evolving. And that was part of their closing. Right. And then, but you guys said, and I don't blame you personally, but the prosecutor said, you know, went back to the video and said, oh, no, it's she said it from the beginning. You heard the video. That's what happened. And I think that that's a fair argument, given the rule, given the way Rule 807 works, that especially in a, again, in a child victim case where, you know, you're dealing with, you know, a seven-year-old child who's trying to remember things two years later. And what is more reliable? What is more trustworthy? That statement of the defense is still able to argue you shouldn't believe that because the story is evolving. You heard her testify to anal penetration, something she had never said before. And so therefore, you know, we believe this is made up. The defense was able to make that argument. And, you know, that doesn't alter the analysis for whether the video was properly admitted under Rule 807. Now, a district judge abuses his discretion when he makes a decision that is arbitrary, capricious, whimsical. And this is the polar opposite of Judge White. His decision was reasoned. It was thoughtful. He initially declined to rule pretrial when he was faced with the competing motions in limine, because he wanted to hear what the trial testimony was. So he waited after he heard PG testify. The government renewed its motion to admit the video, and he applied the correct test. He analyzed both elements of Rule 807, trustworthiness and probativeness, and he decided in his discretion that this video should come in. We would assert that that is not an abusive discretion. Okay. What do you think about sending the video back into the jury room? Once the video was admitted, it was an exhibit like any other exhibit. And sending the exhibits back to the jury is something that is within the sound discretion of the trial judge. And as the parties differently, then it's within the judge's discretion. And here there's no argument that he allowed government exhibits in, but not defense exhibits. He allowed them to go to the jury. He was very even-handed in how he treated that. I guess the problem here is maybe it skews the evidence, because they heard her testimony on the stand, and which was not entirely consistent with the video. But in the end, the last voice available to them is just the video. Well, and we have the Hofer case where the court said that the discretion of the district court is not limited by the fact that the exhibit is an audio recording. If we had a video of a defendant's confession, that would generally go back to the jury. And that's something the nature of it being a video of the victim giving her forensic interview, we don't believe that changes the equation. That it's still something that's within the district court's discretion, and the district court appropriately exercised its discretion here. Now, unless the court has questions on the other issues that have been raised that weren't addressed this morning, I would cede the remainder of my time. Thank you. Okay, thank you. Okay, well, you've got two minutes. Thank you, Your Honors. I want to make really clear that her direct testimony, she was asked, PG, do you remember any other part of his body touching you, like his hands or mouth or your mouth or anything like that? It was never asked about Good Friday, that day or anything like that. We simply have an inexact question from the prosecutor that was clarified on cross. So I was correct in my statement that in addition to just what was admitted, it went too far. Yes, I think we make two different arguments here. One, I don't think any of it should have ever come in as substantive evidence. But if all we're looking for is some evidence that she said X happened on X date, that can happen in 30 seconds. It doesn't require an hour-long video of a seven-year-old lounging in footie pajamas, looking adorable and frankly appealing to the emotions of the jury instead of to their reason. Proximity does not always mean more probative. In this case, Your Honor, what the defense was is that PG had been sort of bragging in a way a child might about sexual knowledge that she had in a way that was never meant to be overheard. And she said she experienced something that actually she just saw. And so the question of proximity can matter when you're talking about was she influenced by somebody to say something. Proximity, I think, is maybe always valuable, but it matters more in those situations. And what we have here is we have her going into an investigative interview that the police brought her to with an employee of the district attorney's office that's designed to elicit reports of sexual misbehavior. And we also have something really different than someone's memory evolving or changing or losing track of details. I still don't really understand why it matters specifically what happened on Good Friday, given the charging dates here, given that her testimony was simply absolutely sufficient to sustain the conviction and the government had many other tools in their tool belt to address what they didn't like about her testimony on trial. One more question. What's your best case? I think Balfany is our best case because it's most factually similar. B-A-L-F-A-N-Y. But I think again, if you look at every single case, there is no situation that parallels this. You simply don't have a situation where someone testifies competently, completely and without recanting. Okay. Thank you. The case will be submitted. Counselor, excuse. Thank you both for your really excellent arguments.